# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: SEPTEMBER 27, 2018
NOT TO BE PUBLISHED

# Supreme Court of Kentucky



2017-SC-000381-MR
AND
2017-SC-000445-MR

**FINAL**

DATE 10/18/18 Kim Redmon, DC

KEITH MONROE OWENS, JR.      APPELLANT

V.

ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MITCH PERRY, JUDGE
NO. 14-CR-002597

COMMONWEALTH OF KENTUCKY      APPELLEE

AND

2017-SC-000399-MR

KEITH MONROE OWENS, JR.      APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
CASE NO. 2017-CA-000390-OA
JEFFERSON CIRCUIT COURT NO. 14-CR-002597

HON. MITCH PERRY, JUDGE,      APPELLEE
JEFFERSON CIRCUIT COURT

AND

COMMONWEALTH OF KENTUCKY      REAL PARTY IN INTEREST

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

Keith Owens appeals as a matter of right from the Jefferson Circuit Court judgment sentencing him to twenty years' imprisonment for one count of robbery in the first degree, seven counts of robbery in the second degree, and one count of being a persistent felony offender in the second degree. Owens also appeals from the Court of Appeals' dismissal of his petition for writ of mandamus/prohibition.[1,2]

On appeal, Owens argues that (1) the Court of Appeals erred in dismissing his petition for writ as moot, and (2) the trial court erred in imposing court costs in violation of Kentucky Revised Statute (KRS) 23A.205. However, by entering a guilty plea, Owens waived all defenses to his charges, thus rendering his petition for writ moot. Additionally, Owens failed to request that the trial court determine his ability to pay court costs, which means there is no error for this Court to correct on appeal. Accordingly, we affirm.

---

[1] This case is assigned three Supreme Court case numbers: 2017-SC-000381-MR, 2017-SC-000399-OA, and 2017-SC-000445-MR. Owens filed a notice of appeal, *pro se,* on July 27, 2017, which was assigned case number 2017-SC-000381-MR. On August 7, 2017, the Department of Public Advocacy filed a duplicate notice of appeal, which was assigned case number 2017-SC-000445-MR. Case number 2017-SC-000399-OA is the appeal from the original action, the petition for writ of mandamus, in the Court of Appeals. On this Court's own motion, case numbers 2017-SC-000381-MR and 2017-SC-000445-MR were consolidated. On October 31, 2017, this Court granted Owens' motion to consolidate 2017-SC-000399-OA with the already consolidated cases. Therefore, this opinion addresses all assigned case numbers and deals with the two issues Owens raises on appeal: (1) whether the Court of Appeals properly dismissed his petition for writ of mandamus, and (2) whether the Jefferson Circuit Court properly imposed court costs.

[2] Owens titled his *pro se* motion as "Writ of Mandamus and/or Writ of Prohibition." The conclusion of the petition states that the relief sought is a mandate to the lower court to dismiss the indictment. This relief falls more squarely in a writ of mandamus, and therefore the petition will be referred to as a writ of mandamus in this opinion.

## FACTS AND PROCEDURAL HISTORY

On October 6, 2014, a grand jury in Jefferson Circuit Court indicted Owens and charged him with eight counts of robbery for robberies that occurred over a period of ten days in September 2014. The trial court appointed a public defender to represent Owens on October 7, 2014. On September 14, 2015, Owens filed his first *pro se* motion for a fast and speedy trial. The trial court did not rule on the motion, and Owens followed up with a letter to the court on July 26, 2016, inquiring about the status of the motion. If the court intended to deny the motion, Owens requested findings of fact and conclusions of law.

The trial court had previously scheduled the case for a jury trial on June 20, 2016, and then for August 1, 2016, but on that second trial date defense counsel requested a continuance. Defense counsel stated that he and Owens were negotiating a plea agreement with the Commonwealth. The court scheduled a status conference for September 1, 2016.

At the September 1 status conference, the trial court informed Owens's counsel about the July 26 correspondence regarding a speedy trial; defense counsel was unaware of the correspondence. Additionally, the Commonwealth stated that despite trying to reach an agreement over the past several weeks, the parties appeared to be at an impasse. A week later the case was called but no proceedings were held because neither party appeared. After consultation with both sides, the court scheduled the trial to begin on April 17, 2017.

3

On December 2, 2016, Owens filed a *pro se* motion for final disposition of the charges pursuant to KRS 500.110. Additionally, on January 23, 2017, he filed a *pro se* motion for a hearing on his motions. There is no response from the court to any of these *pro se* motions in the record.

On March 8, 2017, Owens filed a *pro se* motion for writ of mandamus against Judge Mitch Perry in the Kentucky Court of Appeals, alleging that his speedy trial rights had been violated. He also tendered a motion to proceed *in forma pauperis* but failed to tender the filing fee. The petition was not actually filed in the Court of Appeals until April 5, 2017, when he submitted a partial filing fee.

On April 17, 2017, with a jury trial scheduled to begin, Owens pled guilty to one count of first-degree robbery with an agreed sentence of ten years, and seven counts of second-degree robbery, with ten years for each count, which was enhanced to twenty years for each count for Owens being a persistent felony offender.

In response to Owens's petition for writ in the Court of Appeals, the Commonwealth filed a motion to dismiss the petition as moot due to the entry of a guilty plea.

On June 26, 2017, the trial court sentenced Owens to twenty years' imprisonment in accordance with the terms of his plea deal. On June 28, the Court of Appeals granted the Commonwealth's motion to dismiss the writ of mandamus as moot. That same day, the trial court entered its judgment,

4

which included a provision stating that if Owens is released from custody for any reason, he shall pay court costs in the amount of $130.00.

## I.     The Court of Appeals Did Not Err in Dismissing the Writ of Mandamus as Moot.

Owens argues that the Court of Appeals erred in dismissing the writ of mandamus petition as moot. Owens filed numerous *pro se* motions asserting that his speedy trial rights were violated, which culminated with his petition for writ of mandamus to the Court of Appeals. Owens requests that this Court reverse his convictions and sentence, remand his case to the trial court, and order the court to dismiss the indictment against him.

In *Hoskins v. Maricle*, this Court recognized two broad classes of writ cases: "(1) where the inferior court lacks jurisdiction; and (2) where the court, having jurisdiction is proceeding erroneously." 150 S.W.3d 1, 9 (Ky. 2004). In the second class of cases, there must be a showing of "great injustice and irreparable injury for which there is no adequate remedy by appeal or otherwise." *Id.*

In this case, there is no doubt that the trial court had jurisdiction, making the second class of writs the only viable option for Owens. While Owens cites the *Hoskins* case, he did not establish that he had no other remedy, nor did he prove that he would suffer great injustice or irreparable injury. Despite stating that the delay between indictment and trial "hampered a proper defense," there is no explanation of such hampering. Owens provided no evidence of what caused the delays and alleged violation of his right to a speedy trial. Further, Owens had, and utilized, the remedy of a direct appeal.

5

Moreover, "a plea of guilty made knowingly and voluntarily, waives all defenses to the original charges other than the defense that the indictment fails to charge an offense." *Corbett v. Commonwealth*, 717 S.W.2d 831, 832 (Ky. 1986). On April 17, 2017, Owens indicated that he wanted to change his plea to guilty because he had reached a plea agreement with the Commonwealth. At that time, the trial court engaged in a plea colloquy with Owens to ensure that Owens understood the ramifications of entering a guilty plea. Owens affirmed that he had time to talk to counsel and all his questions were answered; that he did not have any other questions for his attorney or the judge about anything involving his case; and that he was satisfied with the legal advice he was given. At no point during the plea colloquy did Owens or his counsel raise the speedy trial or writ issue. The trial court determined that Owens's guilty plea was made knowingly and voluntarily.

Since the plea was made knowingly and voluntarily, the Court of Appeals was correct in dismissing Owens's original writ action as moot. Owens argues that the Court of Appeals' delay in ruling on the writ was a direct cause of the mootness. He asserts that if the Court of Appeals had granted the writ prior to sentencing, Owens could have moved the trial court to withdraw his guilty plea and have the writ enforced. However, "[r]elief by way of prohibition or mandamus is an extraordinary remedy and we have always been cautious and conservative both in entertaining petitions for and in granting such relief." *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky. 1961). If Owens thought the Court of Appeals would grant his petition for writ of mandamus, he could have

6

declined the Commonwealth's plea offer or prolonged entering his guilty plea until the appellate court ruled.

The law is clear – when a defendant enters a guilty plea, he waives all defenses, except that the indictment fails to charge an offense. This exception is not at issue here. Therefore, we affirm the dismissal of the petition for writ of mandamus as moot.

## II. The Trial Court Did Not Err in Ordering Owens to Pay Court Costs.

The final sentencing judgment states: "[i]f the defendant is released from custody for any reason, he shall pay court costs in the amount of $130.00." Owens argues that the trial court erred in ordering him to pay court costs in violation of KRS 23A.205. Owens admits that this issue was not preserved for appellate review, but nonetheless asserts that because this is a sentencing issue, it "cannot be waived by failure to object." *Jones v. Commonwealth*, 382 S.W.3d 22, 27 (Ky. 2011). However, in *Spicer v. Commonwealth*, this Court held that "[i]f a trial judge was not asked at sentencing to determine the defendant's poverty status and did not otherwise presume the defendant to be an indigent or poor person before imposing court costs, then there is no error to correct on appeal." 442 S.W.3d 26, 35 (Ky. 2014).

The trial court did not err in ordering Owens to pay court costs. KRS 23A.205(2) states:

> The taxation of court costs against a defendant, upon conviction in a case, shall be mandatory and shall not be subject to probation, suspension, proration, deduction, or other form of nonimposition in the terms of a plea bargain or otherwise, unless the court finds that the defendant is a poor

7

person as defined by KRS 453.190(2) and that he or she is unable to pay court costs and will be unable to pay the court costs in the foreseeable future.

The statute requires the imposition of court costs on a convicted defendant, "unless the court finds that the defendant is a poor person defined by KRS 453.190(2)." This requires a factual determination by the trial court that the defendant is a "poor person." The "poor person" definition in KRS 453.190(2) states that such a person is "unable to pay the costs and fees of the proceeding in which he is involved without depriving himself or his dependents of the necessities of life, including food, shelter, or clothing."

In *Spicer*, this Court determined that imposing court costs in a judgment is only illegal if such costs are imposed on someone adjudged to be "poor." 442 S.W.3d at 35. This Court declined to reverse court costs on appeal in *Spicer* because the trial judge was not asked at sentencing to determine Spicer's poverty status "and did not otherwise presume the defendant to be a . . . poor person before imposing court costs." *Id.* "[T]here is no affront to justice when we affirm the assessment of court costs upon a defendant whose status was not determined." *Id.*

There is nothing in the record to suggest an assessment of Owens's financial status, other than the appointment of a public defender. The appointment of a public defender does not necessarily mean a defendant is exempt from paying court costs. *Spicer,* 442 S.W.3d at 35. Owens did file a motion to proceed *in forma pauperis* on his original writ action in the Court of Appeals. This motion appears to be an attachment to one of the several *pro se*

pleadings Owens filed. Additionally, Owens filed a motion to proceed *in forma pauperis* on his appeal from his guilty plea, but that motion was not filed until approximately one month after final sentencing. However, the requirements for being permitted to proceed as a pauper versus the "needy person" standard used to determine indigency under KRS 31.110 are distinct.

The "needy person" standard focuses only on the inability "to provide for the payment of an attorney and all other necessary expenses of representation." *Maynes v. Commonwealth,* 361 S.W.3d 922, 926 (Ky. 2012). "A defendant who qualifies as 'needy' under KRS 31.110 because he cannot afford services of an attorney is not necessarily 'poor' under KRS 23A.205." *Hall v. Commonwealth,* 551 S.W.3d 7, 40 (Ky. 2018). Additionally, the definition of a "needy person" under KRS 31.100 focuses on a present need, while KRS 23A.205 takes into account the "foreseeable future" ability to pay court costs. Therefore, even if the trial court was aware of Owens's need to proceed *in forma pauperis* on appeal, this did not automatically qualify him as a "poor person" for purposes of considering court costs.

Owens cites, and criticizes the Commonwealth for not addressing, *Buster v. Commonwealth,* which held that "all determinations related to whether and how a defendant will pay court costs must be made by or at the time of sentencing." 381 S.W.3d 294, 305 (Ky. 2012). While this is the correct statement of the law, it's applicability to the present case is misplaced. In *Buster,* the trial court did not determine court costs at sentencing but rather decided to delay the determination of court costs, and whether Buster was a

9

"poor person," until his release. In Owens's case, the trial court determined court costs in its final judgment. The trial court did not attempt to reserve jurisdiction to impose court costs at the time of Owens's release, as the trial court incorrectly did in *Buster*.

In sum, Owens did not ask the trial court to determine his poverty status at the time of sentencing. "It is only when the defendant's poverty status has been established, and court costs assessed contrary to that status, that we have a genuine 'sentencing error' to correct on appeal." *Spicer*, 442 S.W.3d at 35. Owens did not object to the imposition of court costs, and there was no sentencing error given that the trial court was never asked to assess Owens's ability to pay. Therefore, we affirm the imposition of court costs.

## **CONCLUSION**

For the foregoing reasons, we affirm the trial court's conviction and sentence and further affirm the Court of Appeals' dismissal of Owens's petition for writ of mandamus as moot.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang
Assistant Public Advocate
Appellate Division


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Perry Thomas Ryan
Assistant Attorney General

Andrew Jacob Gochenaur
Special Assistant Attorney General